```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEBRASKA
```

| | | |
|---|---|---|
| RODNEY R. BRANDT, | ) | |
| | ) | |
| Plaintiff, | ) | 4:03CV3221 |
| | ) | |
| v. | ) | |
| | ) | |
| UNION PACIFIC RAILROAD, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff and defendant mediated this case on January 28, 2005. Both parties claim they reached a full settlement that day which was memorialized in a Memorandum of Understanding. The Memorandum of Understanding states:

> Defendant(s) Union Pacific shall pay the sum of $150,000 less paybacks to Plaintiff(s) Rodney Brandt by no later than February 21, 2005, in return for a full and complete release of all claims arising from the dispute at issue.

Filing 33, ex. B ¶ 2. Paragraph 3 of the Memorandum of Understanding states that the plaintiff agrees to satisfy all liens and subrogation interests from the proceeds of the settlement and to indemnify the defendant from all liens and subrogation interests.

The parties agree that prior to or during the course of the mediation, Provident Insurance Company misinformed Union Pacific concerning the amount of Supplemental Sickness Benefits (SSB) plaintiff received from Provident that were owed as a payback to Union Pacific. Provident advised Union Pacific that the SSB totaled $3,350.35, and Union Pacific provided this information to the plaintiff during settlement negotiations. See filing 33, Ex. C, Brandt affidavit; Ex. D, Foley affidavit; ex. H. In reality, as the parties later learned, the SSB payback totaled $12,306.35.

Union Pacific presented a Release of Claims form to the plaintiff on approximately February 11, 2005. See filing 33, exs. E and F. The Release of Claims form stated the SSB payback to be subtracted from the total settlement amount of $150,000 was $12,306.35. That, in turn, reduced the plaintiff's net settlement amount (the "new money" amount received) plaintiff agreed to accept by $8,959.00. The plaintiff refused to sign the release of claims because he had relied on the $3,350.35 SSB payback amount in agreeing to settle his case for $150,000 minus paybacks. Union Pacific responded that the plaintiff agreed to accept a gross settlement amount of $150,000 as reflected in the Memorandum of Understanding and is bound by the terms of that memorandum. See filing 33, exs. G & I. The plaintiff's payback for SSB benefits is paid to Union Pacific, which paid the premium to Provident. See filing 33, ex. H.

The plaintiff has filed a motion to enforce the settlement agreement, claiming he is entitled to $150,000 minus paybacks of $3,350.35, rather than $12,306.35, subtracted for the SSB payback. Filing 33. The defendant has filed what it refers to as a "Brief in Opposition to Plaintiff's Motion to Enforce Settlement Agreement," filing 34, but this brief actually argues that the "Court should enter an Order enforcing the clear and unambiguous terms" of the settlement agreement as reflected in the parties' Memorandum of Understanding, that being a $150,000 gross settlement minus the actual amount of paybacks.

The Supreme Court has held that the validity of releases of claims under FELA is a question of federal law, not state law. Maynard v. Durham & S. Ry., 365 U.S. 160, 161 (1961), Dice v. Akron, Canton, & Youngstown R.R. Co., 342 U.S. 359, 361-2 (1952). In this case, of course, the proffered release was not signed;

however, the memorandum of understanding executed during the mediation session appears to me to serve the same role, albeit less formal, as the formal release later tendered.

> Federal law governs the validity of a release in any FELA action. <u>Maynard v. Durham & S. Ry.</u>, 365 U.S. 160, 161 (1961) (citing <u>Dice v. Akron, Canton & Youngstown R.R.</u>, 342 U.S. 359, 361 (1952)). The party who attacks a release under federal law bears the burden of establishing the purported release's invalidity. <u>Callen v. Pennsylvania R.R.</u>, 332 U.S. 625 (1948). The party attacking the release may meet this burden by showing that the release was not supported by adequate consideration, that he was defrauded, or that he and the other party to the release acted under a mutual mistake of fact as to the settlement. See <u>Maynard</u>, 365 U.S. at 163; <u>Callen</u>, 332 U.S. at 630.

<u>Brophy v. Cincinnati, New Orleans, & Texas Pacific Ry. Co.</u> 855 F.Supp. 213, 215 (S. D. Ohio 1994).

     In this case the parties both urge the court to "enforce" their settlement agreement, but they disagree on what that agreement was. It is true that the plaintiff had received benefits and could have taken pencil to paper and figured their value. Likewise the defendant could have asked the provider again to ensure the accuracy of the numbers it had given the claims representative. Still further, the parties could have put an actual amount on the "paybacks" provision in their memorandum of understanding.

     I do not think there was a "meeting of the minds" as to the material fact of the amount of the settlement. The record before me supports the conclusion that at the time the memorandum was

3

executed all parties present were operating on the representation from Provident--later discovered to be false--that the Supplemental Sickness Benefit payback was $3,350.35.  Under these circumstances both parties were misled and neither party contemplated that the payback amount given by Provident was not accurate.  Since the amount of the settlement is the central term of the settlement agreement, the failure of the parties to agree to an amount undermines the viability of their agreement.  In other words, there is no agreement to "enforce."

I conclude that the matter must be put back on the calendar for pretrial conference and trial.

IT THEREFORE HEREBY IS ORDERED:

1.  The plaintiff's motion to enforce settlement agreement, filing 33, is denied.

2.  The trial of the case will commence before the undersigned at 1:30 p.m. on May 23, 2005 in **North Platte, Nebraska.**  Jury selection will be held at commencement of trial.

3.  The pretrial conference will be held on May 11, 2005 at 2:00 p.m. in the chambers of the undersigned, 566 Federal Building and U.S. Courthouse, **Lincoln, Nebraska.**

DATED May 3, 2005

BY THE COURT:

s/ *David L. Piester*
United States Magistrate Judge